IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * Criminal No. RDB-06-0034 |
| VAN CLEVE ASHLEY, | * |
| Defendant. | * |

## MEMORANDUM OPINION

Defendant Van Cleve Ashley ("Defendant" or "Ashley") is a prisoner seeking his release from incarceration as a result of the COVID-19 Pandemic. Ashley is currently serving a 412-month sentence imposed by Judge Marvin J. Garbis of this Court[1] following his convictions for conspiracy to tamper with a witness, in violation of 18 U.S.C § 1512(a)(1); conspiracy to retaliate against a witness, in violation of 18 U.S.C. § 1513(a)(1); and using, carrying and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C § 924(c). (Judgment & Commitment Order, ECF No. 42.) On June 18, 2020,[2] Ashley is scheduled to appear in this Court for a resentencing hearing, during which time this Court will vacate his § 924(c) conviction in light of *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (en banc) and *United States v. Davis*, 139 S. Ct. 2319 (2019)[3] and will resentence him

---

[1] On July 12, 2018, this case was reassigned to the undersigned upon the retirement of Judge Garbis.

[2] The resentencing hearing has once again been rescheduled as a result of the suspended operations of this Court pursuant to Standing Order 2020-05.

[3] In *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (en banc), the United States Court of Appeals for the Fourth Circuit held that conspiracy to commit Hobbs Act robbery does not categorically qualify as a "crime of violence" under 18 U.S.C. § 924(c). In *United Sates v. Davis*, 139 S. Ct. 2319 (2019), the United States Supreme Court held that the "residual clause" definition of a "crime of violence" contained in 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague. The parties agree that Ashley's § 924(c) charge must be vacated as a result of these recent decisions.

on his remaining convictions. (Supplemental Motion to Vacate, ECF Nos. 89-1; Order Confirming Resentencing Schedule, ECF No. 101.)

While awaiting resentencing, Ashley filed the presently pending Emergency Motion for Release Pending Resentencing (ECF No. 201), in which he cites concerns about the potential spread of COVID-19 in the Chesapeake Detention Facility, where he is currently serving his sentence. Defendant's motion is filed pursuant to 18 U.S.C. §§ 3143 and 3145. Together, these provisions permit federal courts to release a defendant pending sentencing only upon a finding that he does not present a flight-risk or a danger to the community and "exceptional reasons" justify his release. Defendant argues that he meets these criteria, and that the potential spread of COVID-19 among the prison population constitutes "exceptional reasons" warranting his immediate release from prison. *See* 18 U.S.C. § 3145. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). Ashley has not met his burden to demonstrate, by clear and convincing evidence, that he does not pose a flight risk and is not a threat to the community. Accordingly, Defendant's Emergency Motion for Release Pending Resentencing (ECF No. 102) is DENIED.

**BACKGROUND**

On January 25, 2006, a federal grand jury indicted Ashley on charges of conspiring and attempting to kill a Government witness. The indictment brought three counts against Ashley: one count of conspiracy to tamper with a witness, in violation of 18 U.S.C § 1512(a)(1) (Count One); one count of conspiracy to retaliate against a witness, in violation of 18 U.S.C. § 1513(a)(1) (Count Two); and one count of using, carrying and brandishing a firearm during

and in relation to a crime of violence, in violation of 18 U.S.C § 924(c) (Count Three). A jury convicted Ashley on all three counts. (Jury Verdict, ECF No. 32.) On February 7, 2007, Judge Marvin J. Garbis of this Court sentenced Ashley to a total term of imprisonment of 412 months. (Judgment & Commitment Order, ECF No. 42.) Specifically, Judge Garbis imposed a total term of imprisonment of 292 months as to Counts One and Two, and 120 months as to Count Three, to be served consecutively. (*Id.*)

Ashley has since challenged his convictions and sentence by appealing to the United States Court of Appeals for the Fourth Circuit and submitting several postconviction motions. On June 1, 2010, the Fourth Circuit affirmed Ashley's conviction and sentence. *United States v. Ashley*, 606 F.3d 135 (4th Cir. 2010). On October 24, 2011, Ashley filed a motion to vacate, pursuant to 28 U.S.C. § 2255, in which he argued that his medical condition and mental health prevented him from assisting in his defense and claimed ineffective assistance of counsel. (ECF No. 64.) This Court denied that motion. (ECF No. 69.) On July 17, 2012, Ashley filed a second motion under § 2255, which was also denied. (ECF Nos. 73, 75.) On August 22, 2019, Ashley filed a third motion under § 2255, seeking to vacate his conviction and sentence on Count Three of the indictment which charged him with a violation of 18 U.S.C. § 924(c) in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). (ECF No. 88.) The Government's response indicated that it agreed that vacatur of Count Three was warranted. (ECF No. 96.) Accordingly, Ashley is scheduled to be resentenced on Counts One and Two on June 18, 2020. (ECF No. 101.)

On March 20, 2020, Ashley filed the presently pending Emergency Motion for Release Pending Resentencing (ECF No. 102). At the time Ashley had filed his motion, a novel strain of coronavirus which causes the disease COVID-19 had infected over 266,000 people and caused at least 11,153 deaths worldwide. (*Id.* at 2.) The pandemic has only worsened in severity since then. At the time of writing, Johns Hopkins University records 1,289,380 confirmed global cases of COVID-19 and 70,590 deaths.[4] As a result of the pandemic, some states have taken steps to reduce jail populations. (*Id.* at 4 n.13.)

## ANALYSIS

This Court is facing a deluge of petitions seeking release from incarceration as a result of the COVID-19 Pandemic. Recently, this Court held that it does not have jurisdiction to adjudicate motions made under 18 U.S.C. § 3582(c)(1)(A)(i), which permits this Court to release a prisoner from custody based on "extraordinary and compelling reasons," unless the prisoner first exhausts certain administrative remedies with the Bureau of Prisons ("BOP") or waits 30 days without a BOP determination. *United States v. Bobbie Johnson*, RDB-14-0441, 2020 WL 1663360 (D. Md. Apr. 3, 2020). In this case, Ashley seeks relief under different statutory provisions: 18 U.S.C. §§ 3143(a) and 3145(c). Together, these provisions permit federal courts to release a defendant pending resentencing only upon a finding that he does not present a flight risk or a danger to the community and "exceptional reasons" justify his

---

[4] *See* Center for Systems Science and Engineering at Johns Hopkins University, *COVID-19 Map*, JOHNS HOPKINS UNIVERSITY & MEDICINE, https://coronavirus.jhu.edu/map.html (last visited April 6, 2020).

release.  Unlike § 3582(c)(1)(A)(i), these provisions do not require administrative exhaustion before petitioning the federal judiciary for release.

The detention or release of prisoners pending sentencing is governed by 18 U.S.C. § 3143(a).  That Section requires the detention of an individual pending sentencing "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released."  18 U.S.C. §§ 3143(a)(1) & (2).  Challenges to detention orders are governed by § 3145(c).  Under that provision, a federal district court may release a prisoner who "meets the conditions of release set forth in section 3143(a)(1) . . . if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."  18 U.S.C. § 3145(c).  In short, to obtain release under § 3145(c) pending sentencing, a prisoner (1) must demonstrate by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of others; and (2) clearly show that there are "exceptional reasons" justifying his release.  *United States v. Mahabir*, 858 F. Supp. 504, 506 (D. Md. 1994).  Ashley has not met his burden to show that he is not likely to flee or pose a danger to the safety of others or to his community.  Accordingly, he may not be released under § 3145(c) even if he could present "exceptional reasons" for his release.

To determine whether a defendant poses a danger to the community, this Court considers a number of factors, including "the nature and circumstances of the offense charged, "the weight of the evidence," the defendant's "history and characteristics," and the "nature and seriousness of the danger to any person or the community that would be posed by the

5

person's release." 18 U.S.C. § 3142; *see also United States v. Davis*, GJH-17-0493, 2020 WL 1638687, at *2 (D. Md. Apr. 1, 2020) (applying these factors to a petition seeking release as a result of the COVID-19 Pandemic).

In this case, the § 3142 factors weigh against releasing the Ashley pending his resentencing. Ashley's convictions are of a shockingly violent nature. As the Fourth Circuit summarized, Ashley was convicted of conspiring to kill a Government witness, Thomas D. Dixon, Jr., who had supplied information to law enforcement officials about a drug dealer, Fred Caruso. *Ashley*, 606 F.3d at 137-38. After discovering that Dixon had been cooperating with the Government, Caruso and Ashley conspired to kill Dixon. *Id.* at 138. Caruso supplied Ashley with Dixon's personal information and a gun to carry out the hit. *Id.* Ashley then enlisted the assistance of Ramaine "Ra-Ra" York, a long-time associate, who shot Dixon in front of his home in Baltimore. *Id.* Dixon barely survived the attack and sustained permanent injuries. *Id.* Caruso paid Ashley for his services, and Ashley in turn distributed a portion of these funds to York. *Id.* The evidence of these crimes presented at trial was overwhelming. A jury convicted Ashley of all counts with which he was charged, and the Fourth Circuit affirmed based on the "substantial evidence" presented at trial. *Ashley*, 606 F.3d at 138-39.

Ashley has a lengthy history of criminal conduct. He has been convicted of assault, including domestic violence, aggravated assault, terroristic threats, burglary, robbery, tampering with records, and witness tampering. As a result of these offenses, Ashley has a criminal history category of VI—the highest category possible under the United States Sentencing Guidelines. This lengthy criminal history suggests that Ashley is prone to

recidivism.  Ashley's wish to live in New Jersey with his common law wife pending his resentencing is especially troubling giving his domestic violence convictions.  Although this Court is mindful that Ashley's offense conduct occurred roughly eighteen years ago and that he has demonstrated good conduct in prison, these consideration do not vitiate his lengthy violent history or assuage the Court that he will not pose a danger to the community.  Accordingly, Ashley has failed to meet his burden to show that would not pose a risk to the community upon his release from prison.

This Court also has grave concerns that Ashley will attempt to use his release from prison as an opportunity to flee government authorities.  At his resentencing hearing, Ashley will not be released from prison.  Ashley was sentenced to a total term of 292 as to Counts 1 and 2 of the indictment, and to a term of 120-months, to be served consecutively, as to his § 924(c) conviction.  (Judgment & Commitment Order, ECF No. 42.)  At the resentencing hearing, only the § 924(c) conviction will be vacated.  Accordingly, Ashley still faces a potentially lengthy sentence as to Counts 1 and 2.  The prospect of Ashley's return to prison would surely invite a temptation to flee.  Given Ashley's lengthy criminal history, this Court is not convinced that he would be able to resist such a temptation.  Accordingly, this Court finds that Ashley presents a flight risk.

This Court finds that Ashley cannot satisfy the requirements of 18 U.S.C. § 3143(a)(1).  Accordingly, he is not a candidate for pre-sentencing release under 18 U.S.C. 3145(c) even if he could present "exceptional reasons" for his release.  As Judge Hazel recently indicated, this Court certainly has concern for all those in detention facilities during this global pandemic.

These concerns, however, are "insufficient to trigger the release of an individual who this Court has determined poses a threat to the safety of the community, particularly given proffers by the Government that the correctional and medical staff within the Department of Corrections ("DOC") are implementing comprehensive precautionary and monitoring practices sufficient to protect detainees from exposure" to COVID-19. *Davis*, 2020 WL 1638687, at *2. Judge Hazel's analysis applies with equal force in this case, especially given the Government's representation that the Maryland Department of Public Safety & Correctional Services has taken significant measures to prevent the spread of COVID-19 at the Chesapeake Detention Facility. (ECF No. 103 at 8-10.)

## CONCLUSION

For the reasons stated above, Defendant's Emergency Motion for Release Pending Resentencing (ECF No. 102) is DENIED. Defendant will remain incarcerated pending the resentencing hearing scheduled for June 18, 2020.

A separate Order follows.

Dated: April 6, 2020

                                                                         /s/
                                                     Richard D. Bennett
                                                    United States District Judge